There must be some present consideration at the time of the transfer. The petitioner must show that he paid value when he took it, or incurred some responsibility, or relinquished some right, or granted some indulgence, or discharged a precedent debt, upon the faith and credit of the paper. For this principle see the following cases: Sweeney v. Easter, 1 Wall. [68 U. S.] 166; Farrington v. Frankfort Bank, 31 Barb. 183; Fenouille v. Hamilton, 35 Ala. 319; Roseborough v. Messick, 6 Ohio St. 448; Trustees v. Hill, 12 Iowa, 462; Jenkins v. Schaub, 14 Wis. 1; Ruddick v. Loyd, 15 Iowa, 441. These cases have been decided since the case of Goodman v. Simonds and seem to answer the question propounded (but not decided) by the learned judge who delivered the opinion of the supreme court in that case, to wit: "Whether the same conclusion, (viz.: to hold the transfer unaffected by any equities between the original parties) ought to follow, where the transfer was without any other consideration than what flows from the nature of the contract at the time of delivery, and such as may be inferred from the relation of debtor and creditor in respect to the pre-existing debt?" On this question there had been much conflict in the decisions up to that time. The necessity for a present consideration to sustain the transfer and render it superior to any equities between the original parties to the paper, seems to be recognized as the law of this state in the case of Gwynn v. Lee, 9 Gill, 138.

I will therefore sign an order rejecting the said claim of the petitioners against the bankrupt estate of Howard, Cole & Co.

[See Case No. 6,750.]

---

# Case No. 6,752.

## The HOWARD.

[Cited in Baker v. Cargo and Materials of The Slobodna, 35 Fed. 543. Nowhere reported; opinion not now accessible.]

---

# Case No. 6,752a.

## The HOWARD.

[2 Adm. Rec. 148.]

Superior Court, S. D. Florida. April 7, 1838.

SALVAGE COMPENSATION — ILLIBERAL CONDUCT OF SALVORS — PROFESSIONAL WRECKERS.

[1. Salvors who adopt a liberal course of conduct towards a vessel in distress, tendering their services promptly and without stipulations or conditions, and acting gallantly and with alacrity, are entitled to a more liberal reward than those who either wait to be called upon for assistance, or refuse to render it unless the vessel is placed in their charge as security for compensation. The latter attitude is especially worthy of condemnation, and the master who would yield to such a demand, under any circumstances short of total loss, would prove unworthy of his trust.]

[Cited in The Angeline, Case No. 385.]

[2. A wrecking master and his crew boarded a vessel aground on the Florida Reef, and offered to assist in unloading her. The master answered that he did not want his vessel unloaded, as he thought he could get her off without it. He asked, however, that the wrecking crew might "lend a hand" in getting out an anchor. The wrecking master replied that he had no control over his men, and they might assist if they wished to, and his crew then refused to help unless the stranded vessel were given up to them. Held, that the wrecking master's conduct was aggravated by his statement that he had no control over his men, for such control is the only security which the owner has for valuable property necessarily coming into the hands of wreckers in the course of their business.]

[3. Twenty-five per cent., upon a valuation of $35,391, allowed to several wrecking vessels, and their officers and crews, for rescuing, in partially damaged condition, a vessel and cargo stranded upon Florida Reef.]

In admiralty.

Wm. Marvin, for libellants.

C. Walker, for respondent.

WEBB, Judge. In this case James Curry and others have libelled in admiralty, and caused to be attached by the process of this court, the British bark Howard and her cargo of sugars, upon a claim for salvage services alleged to have been rendered in relieving them from great and imminent perils to which they were exposed on the Florida Reef; and, under the same attachment, petitions are presented by Asa F. Tift and George P. Young, also asking compensation in the way of salvage for services rendered by themselves and their respective crews in assisting to save the same property. From the history of this case, as it is disclosed in the pleadings, and by the testimony, it appears that on Saturday night, the third instant (March), the bark Howard, while prosecuting a voyage from Havana, in the island of Cuba, to St. Petersburgh, in Russia, ran ashore on the Florida Reef. That shortly afterwards she was boarded by the petitioner Tift, and six men under his command, who immediately commenced laboring with the crew of the bark for the purpose of relieving her. That they continued to labor all night, and until 11 o'clock a. m. of the next day, before they succeeded in hauling her off the rocks. That about 8 o'clock on Sunday morning, while the bark was still on shore, she was boarded by Captain Tresca, of the sloop Globe, one of the libellants, who tendered the services of himself, his vessel, and crew to unload the bark, which services the respondent did not choose to accept, stating that he did not want his vessel unloaded, as he believed he could get his ship off without taking out any part of her cargo, but, as he was then engaged in getting out another anchor, he would like to have some assistance from Tresca's men (his boat's crew) then on board the bark to aid his own crew in getting it out, to which Tresca replied that his men might assist if they thought proper, but he had no control over them. That the